# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WISE, an individual; and CHRISTINA WISE, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> MR. DANIEL NORDELL, in his individual and official capacity; et al., <br><br> Defendants. | CASE NO. 12-CV-1209 - IEG (BGS) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** <br><br> [Doc. Nos. 10, 11] |

Presently before the Court are two motions to dismiss the complaint of Plaintiffs David Wise and Dr. Christina Wise ("Plaintiffs") brought by Defendants County of San Diego ("SD County") on behalf of itself and the San Diego District Attorney's Office ("SD DA"), District Attorney Bonnie Dumanis ("Dumanis"), Deputy District Attorney Jim Koerber ("Koerber"), and District Attorney Investigator Daniel Nordell ("Nordell") (collectively "the County Defendants") and Defendants the State of California ("the State") on behalf of the California Board of Medical Examiners ("CBME") and Angela Chang ("Chang") (collectively "the State Defendants"). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions to dismiss.

## BACKGROUND

The following allegations are taken from the complaint. Dr. Christina Wise ("Dr. Wise") is a licensed clinical psychologist and the owner of San Diego Family Services ("SDFS"), a psychological corporation in the state of California. [Doc. No. 1, Compl. ¶ 15.] David Wise ("Mr.

1  Wise") is Dr. Wise's husband and assists her in managing SDFS. [Id. ¶ 16.]

2  Between July 2010 and September 2010, several interns and a book keeper, Star Patterson, 3 were hired to work at SDFS. [Compl. ¶ 17.] On or about the week of October 12, 2010, Dr. 4 Murray Rudenberg–another psychologist who worked at SDFS–and the three interns conspired to 5 close SDFS by removing all its patients, sabotaging the inpatient contracts, and removing 6 company patient and financial records without permission. [Id. ¶¶ 21-22.] Patterson also 7 improperly removed $2,200 from the SDFS bank account. [Id. ¶ 27.] In response to these actions, 8 the Plaintiffs filed a police report against Patterson, and Dr. Wise filed a complaint against each 9 intern with the state governing board. [Id. ¶¶ 28, 35.]

10 Plaintiffs believe that in retaliation, the interns, Rudenberg, and Patterson filed a complaint 11 against Dr. Wise with the California Board of Psychology, alleging medical billing fraud among 12 other allegations. [Compl. ¶¶ 36.] This complaint led to an investigation by the SD DA's office, 13 which placed Defendant Nordell as the lead investigator. [Id. ¶ 37.]

14 On or about April 5, 2011, Defendant Chang called Dr. Wise on her cell phone to inform 15 her about an investigation interview she wanted to schedule to address the complaint that was 16 filed. [Compl. ¶ 41.] Chang told Dr. Wise that her husband could not be present during the 17 interview, but that she could have an attorney present. [Id. ¶¶ 42-43.] The interview was 18 scheduled to take place on or about May 28, 2011. [Id. ¶ 44.] Later, Dr. Wise's attorney, Steven 19 Frankel, requested to know the names of Dr. Wise's accusers, but Chang failed to provide this 20 information. [Id. ¶¶ 45-47.]

21 A week prior to the scheduled interview, Chang showed up unannounced at Dr. Wise's 22 office. [Compl. ¶ 48.] Chang knew that Dr. Wise was represented by an attorney at that time, but 23 she did not contact Dr. Wise's attorney prior to the visit. [Id.] Chang went from the waiting room 24 into Dr. Wise's office and began asking Dr. Wise questions without asking for permission to speak 25 with her. [Id. ¶ 49-50.] Chang used this visit as an opportunity to search the office for evidence of 26 computers and file cabinets. [Id. ¶ 50.]

27 On or about the last week of May 2011, Dr. Wise and her attorney attended the 28 investigation interview at the offices of the CBME. [Compl. ¶¶ 53.] During the interview, Chang

asked Dr. Wise questions about matters in the complaint filed against her. [Id. ¶ 58.] Chang also asked Dr. Wise about the location of her patient files and where she was currently residing. [Id. ¶ 61.] Plaintiffs provided Chang with their personal information for communication purposes. [Id. ¶ 65.] Chang then provided Nordell with Plaintiffs' personal information. [Id. ¶ 69.]

Nordell then began engaging in various surveillance tactics without first obtaining a search warrant, including wire tapping, video taping, photography, searching Plaintiffs' hotel room at the Country Inn & Suites, and searching Plaintiffs' vehicles. [Compl. ¶¶ 69, 71.] On June 7, 2011, Nordell along with numerous other officials executed a search warrant on Plaintiffs' home. [Id. ¶ 72.] Nordell served Mr. Wise with the search warrant and then gathered the Plaintiffs and their children in the living room of the house and questioned Plaintiffs and took photographs while other officers searched the house.[1] [Id. ¶¶ 72, 76-104.] During his questioning, Nordell accused Plaintiffs of committing billing fraud. [Id.] At some point, Mr. Wise asked if he could take his children to school, and his request was denied. [Id. ¶ 96.] At the conclusion of the search, the officers took several banker's boxes of evidence from Plaintiffs' home, including Mr. Wise's cell phone and a red laptop computer. [Id. ¶ 99.] Searches and seizures were later conducted on Dr. Wise's office and Plaintiffs' storage facility. [Id. ¶ 105.]

Nordell later contacted and questioned Plaintiffs' friends and business clients about the fraud allegations, revealing private and confidential information and causing injury to Plaintiffs' businesses. [Compl. ¶¶ 109-120, 128-40, 148, 158-77, 182-86.] Plaintiffs contacted Nordell in July 2011 and requested the return of some of the seized evidence that was needed for Dr. Wise's practice. [Id. ¶ 121.] Plaintiffs received this evidence along with the red laptop, but the computer did not work. [Id. ¶ 122.] Eventually, Plaintiffs wrote a letter to District Attorney Dumanis complaining about Nordell's actions, and Plaintiffs were informed that Nordell was being investigated by internal affairs. [Id. ¶¶ 179-80.]

On May 18, 2012, Plaintiffs filed a complaint against the Defendants alleging causes of action for (1) violations of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983; (2) civil rights

---

[1] During this search, a female officer forced Dr. Wise out of the shower naked. [Compl. ¶¶ 78-79.]

1 conspiracy pursuant to 42 U.S.C. § 1985(3) and California Penal Code § 182(a)(1)(5); (3) <u>Monell</u>
2 claims for unlawful policies customs, habits, and failure to train; (4) a § 1983 claim for failure to
3 supervise; (5) violation of the California Medical Information Act; (6) violation of California
4 Government Code § 6254(c); (7) violation of the Health Insurance Portability and Accountability
5 Act, 42 U.S.C. §§ 1320 *et seq.*; (8) violation of Plaintiffs' <u>Miranda</u> rights; (9) abuse of power; (10)
6 violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") premised upon
7 violation of 18 U.S.C. § 1503(a); (11) violation of RICO premised upon violation of 18 U.S.C. §
8 1513(e); (12) assault; (13) intentional infliction of emotional distress; (14) negligent infliction of
9 emotional distress; (15) defamation; and (16) intentional interference with prospective economic
10 relations. [Compl.] By the present motion, the County Defendants and the State Defendants move
11 to dismiss the complaint in its entirety. [Doc. Nos. 10, 11.]

## DISCUSSION

### I.   Legal Standards for a Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. FED. R. CIV. P. 12(b)(6); <u>Navarro v. Block</u>, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. <u>Cahill v. Liberty Mutual Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citation omitted). A court need not accept "legal conclusions" as true. <u>Iqbal</u>, 556 U.S. at 678.

In addition, factual allegations asserted by *pro se* plaintiffs, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, and in spite of the deference the court is bound to pay to any factual allegations made, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Nor must the court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (citation omitted), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); see also Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations).

**II.  Analysis**

    A.  The Case or Controversy Requirement

As an initial matter, the County Defendants argue that Plaintiffs' complaint should be dismissed for failure to satisfy Article III's case or controversy requirement, relying on O'Shea v. Littleton, 414 U.S. 488 (1974). [Doc. No. 10-1 at 8-10.] Under Article III, "those who seek to invoke the power of federal courts must allege an actual case or controversy." O'Shea, 414 U.S. at 493. Therefore, plaintiffs in federal court "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." Linda R. S. v. Richard D., 410 U.S. 614, 617 (1973). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" O'Shea, 414 at 494. "Abstract injury is not enough." Id.

With respect to Plaintiffs' claims for damages, Plaintiffs have clearly alleged that they have suffered an actual injury in fact satisfying Article III's case or controversy requirement. However, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." O'Shea, 414 U.S. at 495. In the complaint, Plaintiffs seek various forms of injunctive relief. Specifically, Plaintiffs seek (1) an injunction suppressing the use of unlawfully

obtained evidence; (2) an injunction ordering the return of any evidence obtained from Defendants' investigation; (3) an injunction against any further harassment, defamation, or the reissuance of a search warrant; and (4) an injunction preventing Defendants from taking any further action. [Compl. ¶¶ 233, 249-50, 260-61, at 77.]  However, Plaintiffs do not allege that any criminal proceedings have been instituted against them.[2]  Therefore, Plaintiff have failed to allege that there is any real or immediate threat that the allegedly unlawfully obtained evidence might be used against them in a criminal proceeding.  Plaintiffs' injury at this time is merely hypothetical.  Similarly, Plaintiffs do not allege that there is any real of immediate threat that a search warrant will be reissued against them or that the Defendants will engage in any future unlawful conduct.  Therefore, based on the allegations in the complaint, these claims for injunctive relief fail to satisfy Article III's case or controversy requirement.  See O'Shea, 414 at 494; City of Los Angeles v. Lyons, 461 U.S. 95, 111-12 (1983) ("[R]ecognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate.").  The only real and concrete injury that Plaintiffs allege in support of their claims for injunctive relief is that Defendants are currently in possession of Plaintiffs' property that was unlawfully seized and is needed for Dr. Wise's practice. [Compl. ¶¶ 121-22, 188, 255, 264.]  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims for injunctive relief except for their claims related to the return of seized property that is currently in the possession of the Defendants.

B. Eleventh Amendment Immunity

As an another preliminary matter, the State Defendants argue that Plaintiffs' claims against the State and the CBME should be dismissed because they are entitled to immunity under the Eleventh Amendment. [Doc. No. 11-1 at 5-6.]  "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1994).

---

[2] Indeed, if formal criminal proceedings had been instituted against the Plaintiffs, then all of Plaintiffs' claims for injunctive relief would be barred by the doctrine of abstention under Younger v. Harris, 401 U.S. 37, 41 (1971).

1 Plaintiffs name as a Defendant the CBME. Plaintiffs allege that the CBME is an agency of
2 the state of California. [Compl. ¶ 11.] See also McPheeters v. Bd. of Med. Exam'rs, 74 Cal. App.
3 2d 46, 49 (1946). Therefore, Plaintiffs' claims against the CBME are barred by immunity under
4 the Eleventh Amendment. See Franceschi, 57 F.3d at 831; Forster v. Cnty. of Santa Barbara, 896
5 F.2d 1146, 1149 (9th Cir. 1990). Accordingly, the Court **DISMISSES WITH PREJUDICE**
6 Defendant CBME.

### C. 42 U.S.C. § 1983 Claims

Plaintiffs bring several claims for violations of their constitutional rights pursuant to 42 U.S.C. § 1983. "To establish a prima facie case under § 1983, [a plaintiff] must establish that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution and laws of the United States." Humphries v. County of Los Angeles, 554 F.3d 1170, 1184 (9th Cir. 2009).

#### 1. Fourth Amendment Search and Seizure Claims

Plaintiffs bring several claims alleging violations of their rights under the Fourth Amendment. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

##### i. Unlawful Searches

Plaintiffs bring a Fourth Amendment Claim against Defendants Nordell and Chang challenging the search of Dr. Wise's office and Plaintiffs' hotel room. [Compl. ¶¶ 199-209, 212-23.] Plaintiffs challenge Chang's search of Dr. Wise's office without a warrant or obtaining Plaintiffs' permission. [Id. ¶ 203.] The State Defendants argue that Plaintiffs' claim should be dismissed because Dr. Wise's office is open to the public and, therefore, Chang's inspection of the premises was not a search within the scope of the Fourth Amendment. [Doc. No. 11-1 at 6-7.]

The Fourth Amendment provides that people are protected from warrantless searches and seizures. United States v. Basher, 629 F.3d 1161, 1167 (9th Cir. 2011). The Fourth Amendment's prohibition against unreasonable searches applies to administrative inspections of private commercial property. Donovan v. Dewey, 452 U.S. 594, 598 (1981). Further, "administrative

entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." See v. City of Seattle, 387 U.S. 541, 545 (1967); see also Lo-Ji Sales v. New York, 442 U.S. 319, 329 (1979) ("There is no basis for the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees.").

Plaintiffs allege that Chang not only entered Dr. Wise's waiting room, but also entered into Dr. Wise's office without first obtaining a search warrant or obtaining Dr. Wise's permission. [Compl. ¶¶ 48-50.] In deciding Defendants' motions to dismiss, the Court must take these factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. See Cahill, 80 F.3d at 337-38. It is reasonable to infer that Dr. Wise's office was not open to the general public, but only to her patients, and that even if the waiting room was open to the general public, her actual office was not. Plaintiffs also allege that Chang entered Dr. Wise's office for the purpose of gathering evidence for Nordell's investigation. [Compl. ¶ 50.] The Supreme Court has explained that when commercial property is searched for evidence of a crime, the property may not be entered without a warrant. See Donovan, 452 U.S. at 599 n.6. Accordingly, the Court declines to dismiss Plaintiffs' Fourth Amendment claim against Chang challenging the search of Dr. Wise's office.

Plaintiffs also challenge Nordell's search of their hotel room when they were staying at the Country Inn & Suites without a search warrant. [Compl. ¶¶ 204, 209.] The County Defendants appear to argue that this claim should be dismissed because Nordell could search these premises under the open-to-the-public exception to the warrant requirement. [Doc. No. 10-1 at 11.] However, the Supreme Court has held that guests in a hotel room are entitled to constitutional protection against unreasonable searches and seizure and, therefore, the Fourth Amendment's warrant requirement applies to the search of a hotel room. See Stoner v. Cal., 376 U.S. 483, 490 (1964); see also United States v. Nerber, 222 F.3d 597, 600 n.2 (9th Cir. 2000) ("For Fourth Amendment purposes, a hotel room is treated essentially the same, if not exactly the same, as a home."). Accordingly, the Court declines to dismiss Plaintiffs' Fourth Amendment claim against Nordell challenging the search of their hotel room.

### ii. Judicial Deception Claim

Plaintiffs bring a Fourth Amendment claim against Nordell challenging the search warrant that was executed on their home. [Compl. ¶¶ 210-11, 224-33.] Specifically, Plaintiffs allege that Nordell relied upon fraudulent information obtained from Rudenberg, Patterson, and the interns to form an unreliable and fraudulent affidavit that Nordell used to secure the search warrant for Plaintiffs' residence. [Id. ¶¶ 210, 225-28.] The County Defendants argue that this claim should be dismissed because the Plaintiffs have failed to sufficiently allege what information in the affidavit was fraudulent. [Doc. No. 10-1 at 11-12.]

The Fourth Amendment requires that a warrant "be based 'upon probable cause, supported by Oath or affirmation[.]'" Kalina v. Fletcher, 522 U.S. 118, 129 (1997). "It is clearly established that the fourth amendment requires a truthful factual showing sufficient to constitute probable cause." Humble v. Cnty. of Missoula, 2010 U.S. Dist. LEXIS 57091, at *13 (D. Mont. Jun. 9, 2010) (citing Franks v. Delaware, 438 U.S. 154, 164 (1978)). To state a § 1983 claim for judicial deception in obtaining a warrant, a plaintiff must allege facts showing (1) that the defendant deliberately or recklessly made false statements or omissions that (2) were material to the finding of probable cause. Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002).

Plaintiffs' conclusory allegations fail to make the required showing to state a claim for judicial deception. Plaintiffs only allege that Nordell relied upon fraudulent information in forming the affidavit that was used to secure the search warrant. [Compl. ¶¶ 220, 225.] However, Plaintiffs do not allege what information was fraudulent, why it was fraudulent, or that Nordell knew or should have known it was fraudulent. Therefore, Plaintiffs have failed to state a Fourth Amendment claim for judicial deception in securing a search warrant. See Galbraith, 307 F.3d at 1126. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Fourth Amendment claim for judicial deception against Nordell.

Plaintiffs also appear to be bringing this cause of action against Defendant Chang. [Compl. ¶¶ 229-33.] However, there are no allegations in the complaint stating that Chang was involved in the procurement of the search warrant. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Fourth Amendment claim for judicial deception against Chang.

### iii. The Withholding of Seized Evidence

Plaintiffs bring a claim under the Fourth Amendment and a claim under the Fourteenth Amendment against Defendant Nordell challenging his failure to return to Plaintiffs their seized property. [Compl. ¶¶ 234-43, 262-67.] The County Defendants argue that Plaintiffs' allegations are insufficient to establish a constitutional violation. [Doc. No. 10-1 at 12.]

"A claim that the government is retaining one's property does not, arguably, state a claim for violation of the Fourth Amendment." Bettin v. Maricopa Cnty., 2007 U.S. Dist. LEXIS 42979, at *64 (D. Ariz. Jun. 12, 2007) (citing Lee v. City of Chicago, 330 F.3d 456, 466 (7th Cir. 2003); Fox v. Van Oosterum, 176 F.3d 342, 351 (6th Cir. 1999)). "However, the Fourteenth Amendment provides that an individual who is deprived of a property interest without due process of law has been deprived of a constitutional right. Accordingly, a plaintiff may state a cause of action based on their right to due process if the defendant takes and refuses to return their property under certain circumstances." Id. However, a negligent or intentional deprivation of property under color of state law does not constitute a violation of the procedural requirements of the Due Process Clause if state law affords the plaintiff a meaningful post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981). The Ninth Circuit has held that "California Law provides an adequate post-deprivation remedy for any property deprivations." Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing CAL. GOV'T CODE §§ 810-895). Therefore, Plaintiffs' allegations that Nordell has refused to return their property fail to state a claim for violation of their due process rights. See Williams v. City of Sacramento Police Dep't, 2012 U.S. Dist. LEXIS 29842, at *14 (E.D. Cal. Mar. 6, 2012) (dismissing due process claim related to seized property because California law provides an adequate post-deprivation remedy). Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' Fourteenth Amendment Due Process claim and their Fourth Amendment claim related to Nordell's refusal to return Plaintiffs' property.

///
///
///

       iv.  Search of Plaintiffs' Laptop and the Seizure of Documents not Mentioned in the Warrant

Plaintiffs bring a Fourth Amendment claim against Defendant Nordell for the allegedly unlawful search of their red laptop computer. [Compl. ¶¶ 244-50.] Plaintiffs also bring a Fourth Amendment claim against Defendants Nordell and Koerber for the alleged seizure of documents not mentioned in the search warrant. [Id. ¶¶ 251-61.] However, the only relief Plaintiffs are seeking from these claims is the suppression of any evidence obtained from the laptop,[3] the suppression of evidence obtained from documents not mentioned in the warrant, and an injunction against the issuance of a future search warrant. [Id. ¶¶ 249-50, 260-61.] As explained above, Plaintiffs may not seek injunctive relief on these grounds because at this time their alleged injuries are merely hypothetical and not real or immediate. See supra section II.A. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Fourth Amendment claims related to the search of their laptop and the seizure of documents allegedly not mentioned in the search warrant.

    2.  Fifth Amendment Claim

Plaintiffs bring a claim against Defendant Nordell for violation of their Miranda rights under the Fifth Amendment. [Compl. ¶¶ 379-407.] However, the only relief Plaintiffs are seeking from this claim is the suppression of any statements obtained while they were in custody and an injunction against the issuance of a future search warrant. [Id. ¶¶ 406-07.] As explained above, Plaintiffs may not seek injunctive relief on these grounds because at this time their alleged injuries are merely hypothetical and not real or immediate. See supra section II.A. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claim for violation of their Miranda rights.[4]

  D.  Monell Claims

Plaintiffs bring a claim against Defendant SD County for municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). [Compl. ¶¶ 286-307.] The County Defendants argue

---

[3] Plaintiffs allege that Defendants have returned the laptop. [Compl. ¶ 122.]

[4] The County Defendants also move to dismiss Plaintiffs' claim for unconstitutional strip search. [Doc. No. 10-1 at 21-22.] However, Plaintiffs do not appear to be bringing a claim challenging the constitutionality of the alleged strip search. Plaintiffs only appear to challenge the alleged strip search as part of their tort claim for assault. [See Compl. ¶¶ 432-44.]

that this claim should be dismissed because it is barred by immunity under the Eleventh Amendment and Plaintiffs' allegations are insufficient to state a claim for municipal liability. [Doc. No. 10-1 at 14-17.]

The County Defendants argue that the Eleventh Amendment bars Plaintiffs' <u>Monell</u> claim because district attorneys act as agents of the state, not the county, when prosecuting and preparing to prosecute crimes. [<u>Id.</u> at 14-16.] "Counties are not entitled to sovereign immunity." <u>Ceballos v. Garcetti</u>, 361 F.3d 1168, 1182 (9th Cir. 2004). However, a county can only be held liable for the acts of its employees if they were acting as a county rather than state officer. <u>Id.</u> If the county defendant was acting as a state officer, he is entitled to Eleventh Amendment immunity, and the county cannot be held liable for those acts. <u>Id.</u> A district attorney is a state officer when he acts as a public prosecutor. <u>Id.</u>; <u>Pitts v. County of Kern</u>, 17 Cal. 4th 340, 359-60 (1998). "District attorneys performing investigatory and other functions, however, are officers of the county." <u>Ceballos</u>, 361 F.3d at 1183. Plaintiffs' <u>Monell</u> claim relates to the actions of Defendant Nordell, who was acting as an investigator and performing investigatory functions for the SD DA. [<u>See</u> <u>Compl.</u> ¶¶ 286-307.] Therefore, based on the allegations in the complaint, Nordell was acting as an officer of the county not the state, and Plaintiffs' <u>Monell</u> claim is not barred by immunity under the Eleventh Amendment. <u>See</u> <u>Ceballos</u>, 361 F.3d at 1183.

The County Defendants also argue that Plaintiffs have failed to properly plead a claim for municipal liability under <u>Monell</u>. [Doc. No. 10-1 at 16-17.] There is no respondeat superior liability under 42 U.S.C. § 1983. <u>Monell</u>, 436 U.S. at 692. Instead, a government entity can only be held liable under section 1983, if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900 (9th Cir. 2011). In order to establish liability for governmental entities under <u>Monell</u>, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." <u>Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted). A municipal policy or custom may be

shown in one of three ways: (1) an express policy; (2) a longstanding practice or custom; or (3) action by an official with final policymaking authority. Delia v. City of Rialto, 621 F.3d 1069, 1081-82 (9th Cir. 2010), reversed on other grounds by Filarsky v. Delia, 132 S. Ct. 1657 (2012). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).

Plaintiffs allege that Nordell acted contrary to county policy and violated their constitutional rights, that he has acted in this manner for years, and that the County has condoned his conduct. [Compl. ¶¶ 290-98.] Taking these allegations as true, Plaintiffs have sufficiently alleged a claim for municipal liability under Monell. See Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011) ("[A] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." (internal quotation marks omitted)). Accordingly, the Court declines to dismiss Plaintiffs' Monell claim.

E.   Supervisor Liability Claims

Plaintiffs bring a § 1983 claim against Defendants Koerber and Dumanis for failure to supervise Defendant Nordell.[5] [Compl. ¶¶ 308-22.] The County Defendants argue that this claim should be dismissed because Plaintiffs have failed to allege facts showing that Koerber and Dumanis are liable under § 1983. [Doc. No. 10-1 at 17-18.]

Under § 1983, there is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. See Iqbal, at 676; Monell, 436 U.S. at 692. Therefore, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to

---

[5] Plaintiffs also allege a cause of action for failure to supervise against Defendant CBME. [Compl. ¶¶ 323-32.] However, as explained in a prior section, this claim is barred by immunity under the Eleventh Amendment. See supra section II.B.

prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); see also Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) ("'Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'").

Plaintiffs allege that Defendants Dumanis and Koerber failed to supervise Nordell and prevent him from violating Plaintiffs' constitutional rights. [Compl. ¶ 309.] This is a legal conclusion that the Court need not accept as true. See Iqbal, 556 U.S. at 678; Barren, 152 F.3d at 1194. Plaintiffs attempt to establish a causal link between Nordell's actions and Defendants Dumanis and Koerber by alleging that Plaintiffs complained about Nordell's actions to SD County and the SD DA office and these complaints were ignored. [Compl. ¶¶ 316-17.] These allegations lack the necessary specificity to establish liability against Dumanis and Koerber for supervisory liability under § 1983. Plaintiffs merely allege that their complaints were communicated to the SD DA office. [Id. ¶ 316.] Plaintiffs fail to allege that these complaints were communicated in time for Defendants Dumanis and Koerber to stop Nordell from allegedly violating Plaintiffs' constitutional rights. Plaintiffs do not allege that Nordell committed any constitutional violations after Plaintiffs made their complaint to SD County and the SD DA. Plaintiffs merely allege Nordell continued to attack Plaintiffs' credibility after Plaintiffs filed their complaints. [Id. ¶ 318.] In addition, it appears from the allegations in the complaint that all of Nordell's alleged constitutional violations occurred before Plaintiffs filed their complaint. [See generally id. ¶¶ 15-190.] Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' § 1983 claim for supervisory liability against Defendants Koerber and Dumanis.

F. 42 U.S.C. § 1985(3) Claim

Plaintiffs allege a federal civil conspiracy claim pursuant to 42 U.S.C. § 1985(3) against Defendants Nordell and Chang. [Compl. ¶¶ 268-78.] The State and County Defendants argue that this claim should be dismissed because Plaintiffs have failed to allege that Defendants Nordell and Chang's actions or inactions were motivated by a racial or class-based animus towards Plaintiffs.

1  [Doc. No. 10-1 at 13; Doc. No. 11-1 at 8-9.]

2  A claim brought for violation of § 1985 requires four elements: (1) a conspiracy; (2) for the
3  purpose of depriving, either directly or indirectly, any person or class of persons of the equal
4  protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in
5  furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or
6  deprived of any right or privilege of a citizen of the United States. Sever v. Alaska Pulp Corp.,
7  978 F.2d 1529, 1536 (9th Cir. 1992). A racial, or perhaps otherwise class-based, invidiously
8  discriminatory animus is an indispensable element of a § 1985 claim. Sprewell v. Golden State
9  Warriors, 266 F.3d 979, 989 (9th Cir. 2001); see also Griffin v. Breckenridge, 403 U.S. 88, 102
10 (1971) ("The language requiring intent to deprive of equal protection . . . means that there must be
11 some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the
12 conspirators' action.").

13 To state a claim of conspiracy under § 1985, a plaintiff must also allege facts with
14 sufficient particularity to show an agreement or a meeting of the minds to violate her constitutional
15 rights.  Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998); Woodrum v. Woodward County, 866
16 F.2d 1121, 1126 (9th Cir. 1989). "Vague and conclusory allegations of official participation in
17 civil rights violations are not sufficient to withstand a motion to dismiss." Ivey v. Board of
18 Regents, 673 F.2d 266, 268 (9th Cir. 1982); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d
19 621, 626 (9th Cir. 1988) ("[a] mere allegation of conspiracy without factual specificity is
20 insufficient").

21 Plaintiffs allege that Nordell, Chang, and the staff from the Hotel conspired to violate
22 Plaintiffs' constitutional rights by engaging in an unlawful search. [Compl. ¶¶ 271-75.] However,
23 these are only vague and conclusory allegations of a conspiracy. Plaintiffs' complaint does not
24 allege facts showing an agreement by Defendants Nordell, Chang, and the hotel staff with
25 sufficient particularity to state a claim for civil conspiracy under section 1985. See Karim-Panahi,
26 839 F.2d at 626; Ivey, 673 F.2d at 268. In addition, Plaintiffs' complaint does not contain any
27 allegations showing that there was some "invidiously discriminatory animus" behind Defendants
28 Nordell and Chang's actions. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE**

Plaintiffs' § 1985 claim

### G. HIPAA claim

Plaintiffs bring a claim against SD County and Nordell for violations of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. 1320 *et seq*. [Compl. ¶¶ 363-78.] However, the Ninth Circuit has held that "HIPAA . . . provides no private right of action." Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1081 (9th Cir. 2007); accord. United States v. Streich, 560 F.3d 926, 935 (9th Cir. 2009). Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' HIPAA claim.

### H. RICO Claims

Plaintiffs bring two causes of action for violations of the RICO Act against Nordell. [Compl. ¶¶ 415-31.] The County Defendants argue that Plaintiffs' allegations fail to satisfy the elements of a civil RICO claim. [Doc. No. 10-1 at 19-21.]

To state a civil RICO claim, a plaintiff must allege: "(1) conduct; (2) of an enterprise; (3) through a pattern (4) of racketeering activity (known as predicate acts); (5) causing injury to plaintiff's business or property." Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005). In attempting to satisfy the racketeering activity element of their RICO claim, Plaintiffs allege as predicate acts that Defendant Nordell violated 18 U.S.C. § 1503(a)–obstruction of justice–and 18 U.S.C. § 1513(e)–witness tampering. [Compl. ¶¶ 415-31.] However, these two criminal provisions only apply to federal proceedings. See Green Leaf Nursery v. E.I. DuPont De Nemours and Co., 341 F.3d 1292, 1307 (11th Cir. 2003) ("Federal obstruction and witness intimidation claims are only applicable to federal proceedings."); O'Malley v. N.Y. City Transit Auth., 896 F.2d 704, 707 (2d Cir. 1990); Griffin v. City of Milwaukee, 2010 U.S. Dist. LEXIS 126905, at *24 (E.D. Wis. Nov. 15, 2010) ("[T]he reach of the witness and victim tampering statute[, 18 U.S.C. § 1503,] is limited to federal proceedings."). Plaintiffs do not allege that any of Nordell's acts were done in conjunction with a federal proceeding. To the contrary, Plaintiffs allege that Nordell's acts were done as part of a state investigation. [See Compl. ¶¶ 36-187.] Therefore, Plaintiffs' allegations fail to satisfy the predicate acts element of their RICO claim. Accordingly, the Court **DISMISSES WITH**

**PREJUDICE** Plaintiffs' RICO claims.

I.  State Law Claims

Plaintiffs bring several state law claims in their complaint against Defendants Nordell, Chang, Koerber, and SD County. [Compl. ¶¶ 279-85, 333-62, 408-14, 432-97.] Specifically, Plaintiffs allege causes of action for civil conspiracy under state law, violation of the California Medical Information Act, violation of California Government Code § 6254(c), abuse of power, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, and intentional interference with prospective economic relations. [Id.] The County Defendants argue that all of these claims should be dismissed because they are protected by immunity under California Government Code § 821.6. [Doc. No. 10-1 at 14, 18.]

Under California law, a public entity is not liable for injury except where provided by statute. CAL. GOV. CODE § 815. A public entity is vicariously liable for an "injury proximately caused by an act . . . of an employee of the public entity within the scope of his employment if the act . . . would, apart from this section, have given rise to a cause of action against that employee . . . ." CAL. GOV. CODE § 815.2(a). A public entity is not liable, however, for an "injury resulting from an act . . . of a public employee of the public entity where the employee is immune from liability." CAL. GOV. CODE § 815.2(b). Except where a statute provides immunity, public employees are liable for injuries they cause to the same extent as a private person. CAL. GOV. CODE § 820. However, a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." CAL. GOV. CODE § 821.6.

California courts have ruled that the immunity provided by Section 821.6 "extends to actions taken in preparation for formal proceedings. Because investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.' " Amylou R. v. County of Riverside, 28 Cal. App. 4th 1205, 1209-1210 (1994). "Immunity under Government Code section 821.6 is not limited to claims for malicious prosecution, but also extends to other causes of action arising from conduct protected under the statute." Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1048 (2007). "California courts construe section 821.6 broadly in

1  furtherance of its purpose to protect public employees in the performance of their prosecutorial
2  duties from the threat of harassment through civil suits." Id.  Moreover, while Section 821.6 has
3  "primarily been applied to immunize prosecuting attorneys and other similar individuals, this
4  section is not restricted to legally trained personnel, but applies to all employees of a public
5  entity." Kemmerer v. County of Fresno, 200 Cal. App. 3d 1426, 1436 (1988) (citation omitted)
6  (Section 821.6 immunity applied to civil service employee of public social services department);
7  see also Richardson-Tunnell v. Schools Ins. Program for Employees, 157 Cal. App. 4th 1056
8  (2007) (Section 821.6 immunity applied to administrators of public school district and public
9  school employee insurance program).  Accordingly, the Defendants are immune from liability for
10 Plaintiffs' state law claims under Sections 815.2 and 821.6 if: (1) Plaintiffs' injuries were caused
11 by public employees; (2) the employees' acts were committed to institute or prosecute a judicial or
12 administrative proceeding; and (3) the employees were acting within the scope of their
13 employment while instituting or prosecuting the proceeding. See Amylou R., 28 Cal. App. 4th at
14 1209.
15     In the complaint, the Plaintiffs allege that the injuries related to their state law claims were
16 caused by Defendants Nordell, Chang, Koerber, and SD County through the SD DA office.
17 [Compl. ¶¶ 279-85, 333-62, 408-14, 432-97.]  The Plaintiffs also allege that Nordell and Koerber
18 are employees of the SD DA, which is a department of the government entity SD County, and
19 Chang is an employee of the CBME, which is a department of the government entity, the State.
20 [Id. ¶¶ 5-6, 8-11.]  Therefore, the Plaintiffs allege that they were injured by public employees.
21 Plaintiffs also allege that all of the Defendant were acting within the scope of their employment
22 while performing the acts described in the complaint.  [Id. ¶ 12.]  Finally, Plaintiffs allege that
23 Defendants Nordell, Chang, Koerber, and SD County's acts were done as part of an investigation
24 by the SD DA office and the CBME related to allegations that Plaintiffs had committed billing
25 fraud.  [See Compl. ¶¶ 37-190, 279-85, 333-62, 408-14, 432-97.]  Therefore, Plaintiffs allege that
26 all of the acts were done as part of an investigation taken in preparation for formal judicial
27 proceedings.
28     Taking Plaintiffs' factual allegations in their complaint as true, the Defendants are immune

1  from liability for Plaintiffs' state law claims under sections 815.2 and 821.6.  Defendants Nordell,
2  Chang, and Koerber's acts were taken in preparation for formal proceedings, and therefore fall
3  well within the scope of the immunity granted by Section 821.6.  See Amylou R., 28 Cal. App. 4th
4  at 1209-1211; Richardson-Tunnell, 157 Cal. App. 4th at 1062-1063.  Moreover, because
5  Defendants Nordell and Koerber are immune from liability under Section 821.6, SD County is also
6  immune from liability.  CAL. GOV. CODE § 815.2(b); see also Kayfetz v. State of California, 156
7  Cal. App. 3d 491, 496 (1984).  Accordingly, the Court **DISMISSES WITH PREJUDICE**
8  Plaintiffs' state law claims for civil conspiracy under state law, violation of the California Medical
9  Information Act, violation of California Government Code § 6254(c), abuse of power, assault,
10 intentional infliction of emotional distress, negligent infliction of emotional distress, defamation,
11 and intentional interference with prospective economic relations.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motions to dismiss.  Specifically, the Court:

1. **DISMISSES WITH PREJUDICE** Defendant CBME;
2. **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims for injunctive relief except for their claims related to the return of seized property that is currently in the possession of the Defendants;
3. **DISMISSES WITH PREJUDICE** Plaintiffs' Fourth and Fourteenth Amendment claims against Nordell challenging his failure to return their property, Plaintiffs' HIPAA claim, Plaintiffs' RICO claims, and Plaintiffs' state law claims for civil conspiracy under state law, violation of the California Medical Information Act, violation of California Government Code § 6254(c), abuse of power, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, and intentional interference with prospective economic relations; and
4. **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Fourth Amendment claim against Chang and Nordell for judicial deception in obtaining a search warrant,

<div style="padding-left:2em">

Plaintiffs' Fourth Amendment claim against Nordell related to the search of their laptop, Plaintiffs' Fourth Amendment claim against Nordell and Koerber related to the seizure of documents not mentioned in the search warrant, Plaintiffs' claim for violation of their Miranda rights under the Fifth Amendment, Plaintiffs' § 1983 claim for supervisory liability against Defendants Koerber and Dumanis, and Plaintiffs' conspiracy claim under § 1985.

</div>

The Court declines to dismiss Plaintiffs' Fourth Amendment claims against Defendants Nordell and Chang related to the search of Dr. Wise's office and Plaintiffs' hotel room and Plaintiffs' Monell claim against SD County. Plaintiffs are **GRANTED** thirty (30) days from the date this Order is filed to file a First Amended Complaint addressing the deficiencies of the pleading set forth above regarding the claims dismissed without prejudice. Plaintiffs are cautioned their First Amended Complaint must be complete in itself, without relying on references to the original complaint, and the First Amended Complaint should not contain claims or parties that have been dismissed with prejudice. Plaintiffs are further cautioned any defendant not named or claim not re-alleged will be considered waived. See King v. Attiyeh, 814 F.3d 1172, 1177-79 (9th Cir. 1996).

**IT IS SO ORDERED.**

**DATED:** September 9, 2012

*[Signature: Irma E. Gonzalez]*

**IRMA E. GONZALEZ**
**United States District Judge**