UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DAVID WISE, an individual;
CHRISTINA WISE, an individual,

                                    Plaintiff,

v.

DANIEL NORDELL, in his individual
and official capacity; JIM KOERBER, in
his official capacity; BONNIE
DUMANIS, in her official capacity; THE
SAN DIEGO DISTRICT ATTORNEY'S
OFFICE; ANGELA CHANG, in her
individual and official capacity; THE
COUNTY OF SAN DIEGO; THE
CALIFORNIA BOARD OF MEDICAL
EXAMINERS; DOES 1-50,

                                    Defendant.

Case No.: 3:12-cv-01209-GPC-BGS

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

**[Dkt. No. 88.]**

Before the Court is a motion to dismiss the First Amended Complaint ("FAC") of
Plaintiffs David Wise and Dr. Christina Wise ("Plaintiffs") brought by Bonnie Dumanis
("Dumanis") (also sued as "San Diego District Attorney's Office"), Jim Koerber
("Koerber"), Daniel Nordell ("Nordell"), and the County of San Diego (collectively
"Defendants"). Defendants move to dismiss for failure to state a claim upon which relief

1

can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons below, this Court **GRANTS** Defendants' motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background

The following allegations are taken from the First Amended Complaint. (Dkt. No. 25, "FAC")  Dr. Christina Wise ("Dr. Wise") is a licensed clinical psychologist and the owner of San Diego Family Services ("SDFS"), a psychological corporation in the state of California. (*Id.* ¶ 14.)  David Wise ("Wise") is Dr. Wise's husband and assists her in managing SDFS. (*Id.* ¶ 15.)  Between July 2010 and September 2010, several interns and a bookkeeper, Star Patterson, were hired to work at SDFS. (*Id.* ¶ 16.)  On or about the week of October 12, 2010, Dr. Murray Rudenberg, another psychologist who worked at SDFS, and the three interns conspired to close SDFS by removing all its patients, sabotaging the inpatient contracts, and removing company patient and financial records without permission. (*Id.* ¶¶ 17, 20-21.)  Patterson also improperly removed $2,200 from the SDFS bank account. (*Id.* ¶ 26.)  In response to these actions, Plaintiffs filed a police report against Patterson, and Dr. Wise filed a complaint against each intern with the state governing board. (*Id.* ¶¶ 27, 34.)

Plaintiffs believe that in retaliation, the interns, Rudenberg, and Patterson filed a complaint against Dr. Wise with the California Board of Psychology, alleging medical billing fraud among other allegations. (*Id.* ¶ 35.)  This complaint led to an investigation by the San Diego District Attorney's ("SDDA") office, which placed Defendant Nordell as the lead investigator. (*Id.* ¶ 36.)

On or about April 5, 2011, Defendant Angela Chang, an office investigator for the California Board of Medical Examiners, called Dr. Wise on her cell phone to inform her about an investigation interview she wanted to schedule to address the complaint that was filed. (*Id.* ¶¶ 9, 40.)  Chang told Dr. Wise that her husband could not be present during the

interview, but that she could have an attorney present. (*Id.* ¶¶ 41-42.) The interview was scheduled to take place on or about May 28, 2011. (*Id.* ¶ 43.) Later, Dr. Wise's attorney, Steven Frankel, requested to know the names of Dr. Wise's accusers, but Chang failed to provide this information. (*Id.* ¶¶ 43-45.)

A week prior to the scheduled interview, Chang showed up unannounced at Dr. Wise's office. (*Id.* ¶ 47.) Chang knew that Dr. Wise was represented by an attorney at that time, but she did not contact Dr. Wise's attorney prior to the visit. (*Id.*) Chang went from the waiting room into Dr. Wise's office and began asking Dr. Wise questions without asking for permission to speak with her. (*Id.* ¶ 48.) Chang used this visit as an opportunity to search the office for evidence of computers and file cabinets. (*Id.* ¶ 49.)

On or about the last week of May 2011, Dr. Wise and her attorney attended the investigation interview at the offices of the California Board of Medical Examiners. (*Id.* ¶ 53.) During the interview, Chang asked Dr. Wise questions about matters in the complaint filed against her. (*Id.* ¶ 57.) Chang also asked Dr. Wise about the location of her patient files and where she was currently residing. (*Id.* ¶ 60.) Plaintiffs provided Chang with their personal information for communication purposes. (*Id.* ¶ 64.) Chang then provided Nordell with Plaintiffs' personal information. (*Id.* ¶ 67.)

Nordell then began engaging in various surveillance tactics without first obtaining a search warrant, including wiretapping, videotaping, photographing, searching Plaintiffs' hotel room at the Country Inn & Suites, and searching Plaintiffs' vehicles. (*Id.* ¶¶ 68-70.) On June 7, 2011, Nordell, along with numerous other officials, executed a search warrant on Plaintiffs' home. (*Id.* ¶ 71.) Nordell served Mr. Wise with the search warrant and then gathered the Plaintiffs and their children in the living room of the house and questioned Plaintiffs and took photographs while other officers searched the house.[1] (*Id.* ¶¶ 74-79.)

---

[1] During this search, a female officer forced Dr. Wise out of the shower naked. (Dkt. No. 25 at ¶ 78.)

During his questioning, Nordell accused Plaintiffs of committing billing fraud. (*Id.* ¶¶ 86-87.) At some point, Mr. Wise asked if he could take his children to school, and his request was denied. (*Id.* ¶ 95.) At the conclusion of the search, the officers took several banker's boxes of evidence from Plaintiffs' home, including Mr. Wise's cell phone and a red laptop computer. (*Id.* ¶ 98.) Searches and seizures were later conducted on Dr. Wise's office and Plaintiffs' storage facility. (*Id.* ¶ 104.)

Nordell later contacted and questioned Plaintiffs' friends and business clients about the fraud allegations, revealing private and confidential information and causing injury to Plaintiffs' business. (*Id.* ¶¶ 108-19, 127-36, 147, 157-79.) Plaintiffs contacted Nordell in July 2011 and requested the return of some of the seized evidence that was needed for Dr. Wise's practice. (*Id.* ¶ 120.) Plaintiffs received this evidence along with the red laptop, but the computer did not work. (*Id.* ¶¶ 121.) Plaintiffs wrote a letter to District Attorney Dumanis complaining about Nordell's actions, and Plaintiffs were informed that Nordell was being investigated by internal affairs. (*Id.* ¶¶ 181-82.)

## B. Procedural Background

On May 18, 2012, Plaintiffs filed a complaint alleging sixteen claims for relief against Defendants. (Dkt. No. 1.) In response, Defendants filed a motion to dismiss for failure to state a claim on all causes of action on June 14, 2012. (Dkt. Nos. 10, 11.) Plaintiffs filed a response in opposition on July 17, 2012, to which Defendants responded shortly after. (Dkt. Nos. 17, 19, 20, 21.) On September 10, 2012, the Court granted in part, and denied in part Defendants' motion, ordering Plaintiffs to file a First Amended Complaint ("FAC") addressing the deficiencies of the pleading within thirty days. (Dkt. No. 24 at 20.)[2] On October 10, 2012, Plaintiffs filed a FAC. (Dkt. No. 25.) On October 30, 2012, Defendants again filed a motion to dismiss for failure to state a claim, to which Plaintiffs responded on January 3, 2013. (Dkt. Nos. 28, 32.)

---

[2] The page numbers are based on the CMCF pagination.

On March 11, 2013, Defendants informed this Court that a criminal case relating to the pending motion to dismiss had been initiated in state court on January 31, 2013 and Plaintiffs had been indicted by a Grand Jury.[3] (Dkt. No. 39.) This Court, finding that the on-going state criminal proceedings implicated important state interests, and noting that the federal case was still in the "early, embryonic stage," abstained and stayed the proceedings under *Younger v. Harris*, 401 U.S. 37 (1971), on March 22, 2013. (Dkt. No. 44 at 4.) Pursuant to this Court's order, Defendants submitted a status report regarding the status of the state court proceedings every 120 days.[4] (Dkt. Nos. 45, 52, 53, 58, 60, 65, 67, 70.)

On February 2, 2016, after eight status reports had been filed, this Court ordered the parties to submit a brief discussing whether the stay should be lifted. (Dkt. No. 71.) Plaintiff David Wise, responding on his own behalf, concluded that "it would be premature

---

[3] A 76-count felony indictment was filed against Plaintiffs. The charge included 68 felonies against more than 20 victims: one count of conspiracy to commit grand theft; 18 counts of presenting false information in an insurance claim; 25 counts of grand theft of personal property; eight counts of issuing checks with nonsufficient funds; one count of using false statements in the sale of a security; three counts of failure to file a tax return; three counts of failure to pay taxes; one count of filing a fraudulent tax return; one count of failure to file a tax return; and seven counts of making a false insurance claim. The indictment also charged Wise with two white-collar crime enhancements. (Dkt. No. 88-1 at 8, citing *People v. Wise,* No. D069259, 2017 WL 836094, at *1 (Cal. Ct. App. Mar. 3, 2017), review denied (May 10, 2017).)

[4] The relevant portions of the status reports are: On October 9, 2014, the San Diego Superior Court accepted guilty pleas from Plaintiffs David Wise and Christina Wise. (Dkt. No. 60.) On November 6, 2014, Plaintiff David Wise was sentenced to 7 years 9 months local prison time and Plaintiff Christina Wise was sentenced to 5 years local prison time in state court. (*Id.*) Restitution hearings were held in August 2015. (Dkt. No. 70.) In November 2014, Plaintiff filed numerous motions in this case which the Court denied because state appellate remedies had not yet been exhausted since he had only recently pled guilty. (Dkt. No. 64.) The status reports did not indicate whether an appeal was filed in the state court case. The status report states that Plaintiff David Wise has filed a petition for writ of habeas corpus in state court. (Dkt. No. 70.)

to lift the stay," citing to his appeal still pending. (Dkt. No. 73 at 5.) Defendants offered this Court the same conclusion.[5] (Dkt. Nos. 74, 75.) On February 22, 2017, the Court redirected Defendants to continue to file status reports every 120 days until the stay in the case was lifted. (Dkt. No. 78.) Pursuant to this order, Defendants filed four additional status reports in 2017. (Dkt. Nos. 80, 82, 84, 85.) In their last two status reports, Defendants indicated that the pending criminal state court case had been fully adjudicated. (Dkt. Nos. 84, 85.)

Accordingly, the Court lifted the stay on July 20, 2017 and set a briefing schedule. (Dkt. No. 86.) Pursuant to the scheduling order, Defendants[6] filed a motion to dismiss the FAC on August 9, 2017. (Dkt. No. 88.) Plaintiffs, however, failed to file an opposition by the deadline set by the Court, September 1, 2017. (Dkt. No. 86.) On September 19, 2017, the Court granted Plaintiffs another opportunity to file an opposition or statement of non-opposition by October 6, 2017. (Dkt. No. 92.) Instead of filing a timely opposition pursuant to the scheduling ordering, Plaintiff David Wise filed a reply to the recent filings on October 19, 2017 requesting that the Court reinstate the stay "until the final duration of time has elapsed for him to challenge his conviction" in state court. (Dkt. No. 96 at 2.) Plaintiff asserts that "he has a year to file in this Court from that date [May 10, 2017] to make is [sic] final challenge to his conviction. . . ." (*Id.*) Noting a "pattern of deflection and delay," Defendants filed a reply on November 20, 2017 asking this Court to grant the present motion to dismiss. (Dkt. No. 98 at 3.) Defendants point to the fact that both

---

[5] Defendants Bonnie Dumanis, Jim Koerber, Daniel Nordell, the County of San Diego, and the San Diego District Attorney's Office noted that "because there remains one pending state appeal regarding the criminal case of Plaintiff David Wise, it appears the stay remains appropriate at this time." (Dkt. No. 74 at 2.) Defendant Angela Chang filed a separate status report, concluding that "[b]ecause Plaintiff may still attack his conviction by way of appeal . . . the Stay of this case should remain in place until all appeals addressing Plaintiffs conviction have been exhausted." (Dkt. No. 75 at 3.)

[6] Defendant Angela Chang did not file a motion to dismiss.

plaintiffs have served their sentences of imprisonment, thereby questioning plaintiff David Wise's ability "to maintain a petition for federal habeas corpus when he is not in custody." (*Id.* at 2.) The Court gave Plaintiffs one final opportunity to file an opposition to Defendants' motion to dismiss, setting the deadline on or before January 26, 2018. (Dkt. No. 100.)

To date, Plaintiffs have not filed an opposition to Defendants' motion to dismiss. Moreover, Plaintiff Christina Wise has not appeared in the case since April 25, 2014, where she filed a notice of change of address. (Dkt. No. 55.) Subsequently, her mail was returned as undeliverable on a number of occasions. (Dkt. Nos. 81, 87, 91, 94, 98, 101.) Plaintiff Christina Wise has since failed to apprise the Court of her new address.

## II. LEGAL STANDARD ON MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 547). In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

While a pro se complaint is to be read liberally, such litigants are not exempt from the procedural rules of this Court. *Weilburg v. Shapiro,* 488 F.3d 1202, 1205 (9th Cir. 2007); *Barrett v. Belleque*, 544 F.3d 1060, 1061-62 (9th Cir. 2008). Rather, pro se complaints may be dismissed for failure to state a claim where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding a prisoner's pro se complaint showing that he had been seen by medical personnel on seventeen occasions insufficient to state a cause of against the physician). Therefore, this Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely conclusory," or require "unwarranted deductions" or "unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations).

## III.   DISCUSSION

There are two grounds on which this Court can grant Defendants' motion to dismiss: (1) Plaintiffs' failure to oppose Defendants' motion to dismiss, pursuant to the Local Rules of this Court; and (2) Plaintiffs' failure to state a claim cognizable in federal court, pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.   Plaintiffs' Failure to Oppose Defendants' Motion to Dismiss

Southern District of California Local Civil Rule 7.1 states that "[i]f an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1(e)(2), that failure may constitute a consent to the granting of a motion or other required for ruling by the court." Civ. L. Rule 7.1(f)(3)(c). The time for filing opposition to a motion, set forth

in Civil Local Rule 7.1(e)(2), is no later than fourteen (14) calendar days prior to the noticed hearing. Civ. L. Rule 7.1(e)(2).

Although the Court construes pleadings filed by pro se litigants liberally, these litigants are still bound by the rules of procedure. *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987). Here, this Court issued an order setting a briefing schedule on January 10, 2018, giving Plaintiff David Wise until January 26, 2018 to file an opposition to Defendants' motion to dismiss. (Dkt. No. 100.) Plaintiff David Wise has failed to file any opposition, timely or otherwise. Rather, Plaintiff David Wise's last communication with this Court was on October 19, 2017, where he requested this Court reinstate the stay until the final duration of time has elapsed for him to challenge his conviction. (Dkt. No. 96.)

Thus, acting pursuant to Local Rule 7.1, this Court is empowered to grant defendant's unopposed motion to dismiss, as Plaintiffs have effectively consented. *See Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995) (*per curiam*) (affirming the district court's grant of an unopposed motion to dismiss under local rule by deeming a pro se litigant's failure to oppose as consent to granting the motion).

### B.  Failure to State a Claim Cognizable in Federal Court

Even if the Court were not to treat Defendants' motion to dismiss as conceded, the Court still grants Defendants' motion because Plaintiffs have failed to state a claim cognizable in federal court in all eight causes of action.

### 1.  *Fourth Amendment Claim – First Cause of Action*

Plaintiffs first allege that Nordell's actions amount to a Fourth Amendment violation. (Dkt. No. 25, FAC ¶¶ 204-281.) Plaintiffs challenge Nordell's search of his hotel room as unlawful because "no reasonable person would expect documents and things necessary to the search warrant to be kept in a hotel room." (*Id.* ¶ 220.) Plaintiffs further claim that Nordell obtained the search warrant through "deceit and unreliable information," thereby invalidating the warrant. (*Id.* ¶ 236.) Moreover, Plaintiffs point to the seizure "of over 20,000 pages in patient files," the search of his laptop, the "wholesale" seizure of

documents, and the deprivation of his property in support of his first cause of action. (*Id.* ¶¶ 224, 254, 265, 278.) Defendants move to dismiss because "[t]he FAC contains no non-conclusory *factual* allegations of *warrantless* searches or seizures, and no non-conclusory *factual* allegations of judicial deception in obtaining the search warrant." (Dkt. No. 88-1 at 15-16.)

### i. Search of the Hotel Room

Plaintiffs believe that Defendants, particularly Nordell, conducted unreasonable searches, alleging that the search warrant obtained was based on "unfounded allegations" and was "overly broad." (Dkt. No. 25, FAC ¶¶ 223, 228.) Defendants note that Nordell did not search anything without a warrant, and cite to Plaintiffs' conclusory allegations, such as lack of a "valid" warrant and lack of "authorized" permission, as insufficient for purposes of their motion. (Dkt. No. 88-1 at 15.)

The Fourth Amendment provides that people are protected from warrantless searches and seizures. U.S. Const. amend. IV; *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011). As to the warrant requirement, the warrant must "particularly describe both the place to be searched and the person or things to be seized." *United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015) (citing *United States v. Smith,* 424 F.3d 992, 1004 (9th Cir. 2005)).

Here, Plaintiffs fail to allege the facts necessary to establish a Fourth Amendment violation. Plaintiffs never dispute that Nordell was acting pursuant to a search warrant. Rather, they attack the validity of the warrant. In doing so, they allege that Nordell relied upon "fraudulent information" obtained from Patterson and the former interns to form an unreliable affidavit for a search warrant. (Dkt. No. 25, FAC ¶ 216.) They provide no specific reason as to why Nordell should have discounted the tips he received from Plaintiffs' former employees, and there is no evidence suggesting that Nordell knew this information was incorrect, but used it to inform his affidavit regardless.

Additionally, Plaintiffs repeatedly accuse Nordell of acting with reckless disregard for the truth, claiming that he "lied to the warrant issuing judge." (*Id.* ¶¶ 218-19.) However, there is a presumption of validity with respect to the affidavit supporting a search warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). When a plaintiff makes allegations of falsehood or of reckless disregard for the truth, "they should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Id.* Plaintiffs have failed to plead their claims with such specificity.

Finally, Plaintiffs make conclusory factual allegations that Nordell's search was overly broad, without first explaining the proscribed limits of the search warrant. Plaintiffs further assert that the search was unreasonable, yet fail to provide details describing each allegedly unlawful search. Without this basic information, this Court cannot make an informed determination as to whether the search exceeded the scope of the warrant. Thus, Plaintiffs have failed to sufficiently allege facts that support a Fourth Amendment violation as to the searches.

### ii. *Judicial Deception Claim*

Plaintiffs brought a similar claim of judicial deception in the original complaint, which this Court dismissed. (Dkt. No. 24 at 9.) Defendants again contend that Plaintiffs' allegations are conclusory, citing to the presumption of validity with respect to an affidavit supporting a search warrant. (Dkt. No. 88-1 at 16.) To state a § 1983 claim for judicial deception in obtaining a warrant, a plaintiff must allege facts showing (1) that the defendant deliberately or recklessly made false statements or omissions that (2) were material to the finding of probable cause. *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). The Court found that the "conclusory allegations" in Plaintiffs' original complaint "fail[ed] to make the required showing to state a claim for judicial deception. (Dkt. No. 24 at 9.)

Here, Plaintiffs again fail to satisfy this legal standard. While Plaintiffs specify what

information they believe to be fraudulent ("intentionally committed fraudulent billing of medical insurance companies and intentionally committed fraudulent real estate transactions"), they do not articulate why it was fraudulent, or why Nordell should have known it was fraudulent. (Dkt. No. 25, FAC ¶ 233.) Furthermore, while Plaintiffs state that these statements "were relied upon by the judge," they do not provide any additional support to show that these statements were material to the finding of probable cause. (*Id.* ¶ 234.) Therefore, Plaintiffs have failed to state a Fourth Amendment claim for judicial deception in securing a search warrant. *See Galbraith*, 307 F.3d at 1126.

### iii. Seizure of Documents and Deprivation of Property Claim

As to the seizure and deprivation of documents, Plaintiffs brought a similar claim in the original complaint, which this Court dismissed. (Dkt. No. 24 at 10.) This Court found that Plaintiffs' original claim failed on both Fourth Amendment and Fourteenth Amendment grounds. (*Id.*) Plaintiffs have made no new allegations in the FAC and the claim remains the same: that Nordell seized "over 20,000 pages in patient files" and did not return them upon Plaintiffs' request. (Dkt. No. 25, FAC ¶¶ 244-48; 277-280.) Thus, Defendants again allege that "the FAC does not allege facts to support that conclusory allegation." (Dkt. No. 88-1 at 16.)

"A claim that the government is retaining one's property does not, arguably, state a claim for violation of the Fourth Amendment." *Bettin v. Maricopa Cty.*, No. CIV 04-02980 PHX MEA, 2007 WL 1713319, at \*20 (D. Ariz. June 12, 2007) (citing *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003); *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999)). Plaintiffs have failed to amend the complaint to include additional facts that support a Fourth Amendment violation based solely on the seizure of documents.

Moreover, "a negligent or intentional deprivation of property under color of state law does not constitute a violation of the procedural requirements of the Due Process Clause if state law affords the plaintiff a meaningful post-deprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981). Here,

the Ninth Circuit has held that "California Law provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov. Code §§ 810-895). Therefore, Plaintiffs' conclusory allegations that Nordell refused to return the documents fail to establish a due process right.

### iv. Search of Laptop and Injunctive Relief

Plaintiffs further allege that the search of the laptop without a "Special Master" or third party to monitor resulted in the search of "intermingled documents," exceeding the scope of the warrant. (Dkt. No. 25, FAC ¶¶ 254-63.) Defendants respond by noting that Plaintiffs' allegations "do not overcome the plain-view doctrine," which allows for the warrantless seizure of evidence if its incriminating character is immediately apparent. (Dkt. No. 88-1 at 17.) In their FAC, Plaintiffs seek an injunction, and general, compensatory, and punitive damages "in an amount to be proven at trial." (Dkt. No. 25, FAC ¶¶ 260-63.)

However, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 495 (1974). Plaintiffs fail to demonstrate an immediate threat that the search warrant will be reissued and there is no evidence to suggest that Defendants will engage in any further alleged unlawful activity. Therefore, based on the allegations in the FAC, this claim for injunctive relief fails to satisfy Article III's case or controversy requirement. *See O'Shea*, 414 at 494; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983) ("[R]ecognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate.").

Additionally, Plaintiffs fail to plead the essential facts necessary to establish an unlawful search of the laptop such that compensatory and punitive relief is justified. Plaintiffs assert that the search was overbroad, however never articulate the defined scope of the warrant, or explain how the search of the files listed falls outside this scope. (Dkt. No. 25, FAC ¶¶ 254-55.) A conclusory statement that the search was "not related to the

search warrant" does not suffice in proving that a search exceeded its intended scope. Therefore, Plaintiffs fail to state a Fourth Amendment claim related to the search of their laptop and the seizure of documents allegedly not mentioned in the search warrant.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim.

### 2.     *Federal Conspiracy Claim – Second Cause of Action*

Plaintiffs' second cause of action alleges conspiracy under 18 U.S.C. § 371, which makes it a crime for "two or more persons [to] conspire . . . to commit any offense *against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose*." *See* 18 U.S.C. § 371 (emphasis added). Defendants assert that no claim is stated under this statute because § 371 provides criminal penalties for conspiracies against the United States as a victim, and provides no civil claim for non-governmental individual alleged conspiracy victims. (Dkt. No. 88-1 at 17.)

Setting aside Plaintiffs' failure to establish the existence of an agreement between Nordell and Chang, Defendants are correct in their assertion that § 371 does not provide relief for a civil claim. Rather, it provides a criminal penalty for conspiracies *against the United States*. *See Dennis v. United States*, 384 U.S. 855, 861 (1966) (this language has long been established to mean "any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government"). Plaintiffs do not allege conspiracy against the United States, and thus have not pleaded sufficient facts to state a claim for federal conspiracy under section 371.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' federal conspiracy claim.

### 3.     *Municipal Liability/Monell Claim – Third Cause of Action*

Next, Plaintiffs bring a claim against Defendants San Diego County, Dumanis, in her official capacity, and Koerber, in his official capacity, for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In order to establish liability for

governmental entities under *Monell*, a plaintiff must prove: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted). A municipal policy or custom may be shown in one of three ways: (1) an express policy; (2) a longstanding practice or custom; or (3) action by an official with final policymaking authority. *Delia v. City of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010), *reversed on other grounds by Filarsky v. Delia*, 132 S. Ct. 1657 (2012).

Here, Plaintiffs assert that their Fourth and Fourteenth Amendment rights are being deprived. (Dkt. No. 25 at 49.) They allege that the municipal policy causing such deprivation is Nordell's "code of conduct" and its ratification by Dumanis and Kroeber, who have "final decision making authority for policies and procedures." (*Id.*) Conversely, Defendants allege that there is no underlying constitutional deprivation and additionally claim that the District Attorney is not a person within the meaning of § 1983, and therefore cannot be found liable. (Dkt. No. 88-1 at 18.)

While Plaintiffs describe Nordell's conduct as "completely against County policy," they fail to define what his conduct consisted of, and how it violates the County's Code of Ethics and Legal Conduct. Rather, they rely on conclusory allegations that Nordell wrongfully investigated them, absent any facts suggesting that Nordell was acting recklessly or was misguided by false information. Moreover, Plaintiffs argue that this conduct has continued for "so many years," yet fail to identify any other instances of alleged misconduct.

Additionally, this Court is not persuaded by Plaintiffs' attempt at holding the County liable for failure to train Nordell. The Supreme Court's decision in *Connick v. Thompson* is instructive. 131 S. Ct. 1350 (2011). The Court there held that a local government's decision not to train an employee *may* amount to an official policy under § 1983. *Id.* at

1359. However, this application is limited to instances where government officials are *deliberately indifferent* to a pattern of constitutional violations—"a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1360. Plaintiffs do not allege the named District Attorneys had knowledge of Nordell's actions, were deliberately ignoring it, had reason not to trust Nordell's professional judgment, or were on notice that additional training should be administered.

As such, Plaintiffs have failed to sufficiently plead that Nordell's alleged misconduct was the result of deliberate indifference to Plaintiffs' constitutional rights by the County, and this Court **GRANTS** Defendants' motion to dismiss Plaintiffs' *Monell* claim.

### 4. Failure to Supervise – Fourth Cause of Action

Plaintiffs allege that Defendants Dumanis and Koerber failed to supervise Nordell and prevent him from violating Plaintiffs' constitutional rights. (Dkt. No. 25, FAC ¶¶ 315-31.) Defendants allege that Dumanis and Koerber cannot be held liable because (1) it has not been shown that they acted unlawfully; and (2) supervisors may not be held liable for the misdeeds of their agents—in this case Nordell. (Dkt. No. 88-1 at 19.) Plaintiffs brought a similar claim in their original complaint, which this Court dismissed for lack of specificity. (Dkt. No. 24 at 14.)

While Plaintiffs now provide details as to how many letters were sent—"six letters between early February 2012 and end of April 2012"—they still do not establish that these complaints were communicated to Defendants Dumanis and Koerber. (Dkt. No. 25, FAC ¶ 323.) Nor do they establish that Nordell committed any constitutional violations *after* Plaintiffs made their complaint to SD County and the SDDA. Rather, they assume that these letters were ignored or "attended to in a nonchalant manner, merely to appease internal matters," with no further detail as to what this entails and why it is constitutionally impermissible. (*Id.* ¶ 325.) Moreover, they allege that Nordell continued to attack Plaintiffs' credibility and recorded conversations after Plaintiffs filed their complaints. (*Id.*

1    ¶ 326.)  However, they do not establish that these actions amount to a constitutional

2    violation.  Thus, this is a legal conclusion that the Court need not accept as true. *See Iqbal*,

3    556 U.S. at 678.

4        Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' § 1983

5    claim for supervisory liability against Defendants Koerber and Dumanis.

6            **5.      *Unlawful Seizure and Miranda Violation – Fifth Cause of Action***

7            **i.      *Unlawful Seizure***

8        Next, Plaintiffs claim that they were seized unlawfully by being placed in custody

9    and interrogated in their home.  (Dkt. No. 25, FAC ¶¶ 332-57.)  Defendants contend that

10   "such allegations state no Fourth Amendment claim because a search warrant implicitly

11   authorizes officers to detain occupants during a search." (Dkt. No. 88-1 at 16.)

12       A § 1983 claim for unlawful seizure must be based upon a claim of constitutional

13   violation. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes

14   liability for violations of rights protected by the Constitution, not for violations of duties

15   of care arising out of tort law.")  In this case, the relevant constitutional provision is the

16   Fourth Amendment, which protects Plaintiffs against warrantless searches and seizures.

17   While Plaintiffs may have been in custody for the duration of the investigation at their

18   home, "the existence of a search warrant . . . provides an objective justification for the

19   detention." *Michigan v. Summers*, 452 U.S. 692, 703 (1981) (noting "the detention

20   represents only an incremental intrusion on personal liberty when the search of a home has

21   been authorized by a valid warrant").  Plaintiffs provide no allegation that Nordell's actions

22   exceeded the scope of the warrant, or that the warrant was invalid.  Thus, Plaintiffs have

23   failed to provide sufficient facts to plead a constitutional violation under 42 U.S.C. § 1983.

24           **ii.     *Miranda Violation***

25       Plaintiffs assert that they were in custody during the investigation at their home, and

26   as such, should have been read their *Miranda* rights. (Dkt. No. 25, FAC ¶¶ 355-56; *citing*

27   *Miranda v. Arizona*, 384 U.S. 436 (1996)).  Defendants contend that questioning an

28

occupant detained during the execution of a search warrant does not raise a Fourth Amendment concern because "mere police questioning does not constitute a seizure." (Dkt. No. 88-1 at 20, citing *Muehler v. Mena*, 544 U.S. 93, 101 (2005).) Moreover, Defendants allege that there is no Fifth Amendment violation because the statements were never used at trial. (*Id.*)

Plaintiffs' prayer for relief under this claim is that the Court compel Defendants to "turn over such evidence to the Plaintiffs" and issue "an injunction against the impending issue of another search warrant attempting to acquire said information and/or documentation." (*Id.* ¶¶ 357-58.) However, Plaintiffs fail to show an immediate threat that the allegedly unlawfully obtained evidence might be used against them in a criminal proceeding, such that an injunction is warranted at this point in time.

They do not allege any criminal proceedings have been further instigated against them, and in fact, both plaintiffs have served their sentences of imprisonment. (Dkt. No. 98 at 2.) Similarly, Plaintiffs do not allege that there is any real or immediate threat that a search warrant will be reissued against them. They merely allege that "Nordell will go to no end to destroy them," with no factual support or evidence to substantiate this allegation. (Dkt. No. 25, FAC ¶ 359.) Thus, at this time, Plaintiffs' alleged injuries are merely hypothetical and do not compel this Court to issue injunctive relief.

Moreover, all that *Miranda* requires is that an unwarned admission be suppressed as evidence. It does not, on its own, give rise to a constitutional violation under 42 U.S.C. § 1983. *Chavez v. Martinez,* 538 U.S. 760, 772-73 (2003). Thus, Plaintiffs have failed to state a cognizable claim for which relief can be granted at this time.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' Fifth Cause of Action as to both the unlawful seizure and right to *Miranda* warning claims.

### 6.    *State Law Claims – Sixth, Seventh, and Eighth Causes of Action*

Plaintiffs' Sixth, Seventh, and Eighth Causes of Action allege intentional infliction of emotional distress, defamation, and intentional interference with prospective economic

relations as to Nordell, in his individual capacity. (Dkt. No. 25, FAC ¶¶ 360-419.) Defendants allege that these state law claims fail because, as public employees, the moving Defendants are exempt from tort liability "for acts taken during an investigation prior to the institution of a judicial proceeding" and enjoy an absolute privilege as to statements made in connection with official proceedings. (Dkt. No. 88-1 at 21.)

Plaintiffs asserted similar state law claims in their original complaint, which were dismissed by this Court *with* prejudice based on California's broad prosecutorial immunity. (Dkt. No. 24 at 17-19.) As such, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' state law claims without further review.

## C.      No Federal Claim for Reputational Injury

While Plaintiffs did not state a cause of action for reputational injury, Defendants cite to a list of examples dispersed throughout the FAC that allege reputational injury. (*See* Dkt. No 88-1 at 24, citing Dkt. No. 25, FAC ¶¶ 109, 113-119, 127-137, 142-154, 161-179, 184-189, 248, 256, 321, and 372.) In these instances, it appears that Plaintiffs allege reputational injury to support their request for damages, rather than to state a cognizable federal claim. Moreover, reputational injury is not a claim for which relief can be granted under § 1983. *See WMX Technologies, Inc. v. Miller*, 197 F.3d 367, 375 (9th Cir. 1999). Therefore, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' reputational injury arguments.

////
////
////
////
////
////
////
////

**Conclusion**

For the reasons set forth above, the Court **GRANTS** Defendants' motion to

dismiss,[7] brought by Defendants Dumanis, the San Diego District Attorney's Office,

Koerber, Nordell, and the County of San Diego.[8]

**IT IS SO ORDERED.**

Dated: March 13, 2018

Hon. Gonzalo P. Curiel

United States District Judge

[7] Because the Court grants Defendants' motion to dismiss on Rule 12(b)(6), the Court
declines to address Defendants' additional arguments on prosecutorial immunity,

qualified immunity and the favorable termination doctrine under <u>Heck v. Humphrey</u>, 512

U.S. 477 (1994). (Dkt. No. 88-1 at 24-26.)

[8] Defendant Angela Chang did not file a Motion to Dismiss and still remains a defendant

in this case.